---

## NEW YORK OYER AND TERMINER.

### THE PEOPLE agt. JAMES SHEPHARD.

The *court of general sessions* in the city of New York have authority to send to the next court of oyer and terminer in that city, *any indictment* found in the court of sessions, not heard and determined, as fully as might have been done before the act of 1855. (*That act gives power to the general sessions to hear, determine and punish capital offences, the same as the oyer and terminer, and upon conviction, providing a writ of error to review such cases before the supreme court and court of appeals.*)

But where the court of appeals have granted a new trial in a case of capital offence, tried in the court of general sessions, on the ground alone that the verdict of the jury was contrary to evidence, and have sent it back to the general sessions for trial, the case should not, especially without any reasons assigned, be sent to the oyer and terminer for such new trial; it should be had in the general sessions.

*New York Oyer and Terminer, January*, 1860.

MOTION to remit the indictment in this case to the court of general sessions for trial.

NELSON J. WATERBURY, *for the people.*
JOHN W. ASHMEAD, *for the prisoner.*

INGRAHAM, Justice.    In this case a new trial was ordered by the court of appeals, and the case was sent back to the court of sessions for trial.    At the last term of that court an order was made, on the application of the district attor-

ney, sending the indictment for trial to the oyer and terminer. A motion is now made that the indictment be remitted for trial to the court of sessions.

The counsel for the prisoner urges, in support of his motion, that since the passage of the act of 1855, the prisoner has a right to insist upon a trial in the sessions, where the indictment was found, and that the district attorney and court of sessions cannot, by sending the indictment to the oyer and terminer, deprive the prisoner of the right which the statute gives him to a writ of error as a matter of right, and to a review of the finding of the jury upon the facts, if the prisoner should be convicted.

The act of 1855 does give to a prisoner convicted in the sessions of a capital offence such a right, but such a right does not depend upon the finding of an indictment in the sessions. The statute allows this only in the case of a conviction in that court, and the provisions of law as to the sending of indictments from that court to the oyer and terminer for trial, are in no way effected by that statute.

By the statute (2 R. S., 5th ed., p. 303, § 6) the court of sessions was directed to send to the oyer and terminer all indictments for offences, which at the time of the passage of the statute was not triable therein, to the oyer and terminer, and at that time no capital case could be tried in that court.

Since the law has been so altered as to give that court the power to try indictments for all offences punishable with death, the obligatory part of those provisions, which compelled the court to send such indictments to the oyer and terminer, has of course ceased to be operative, and if this were the only authority for sending indictments from the sessions, there might be some doubt whether, under that section, the indictment could properly be sent to this court for trial; but the 7th section, on the same page, gives to the sessions a discretionary power to send to the

oyer and terminer all indictments for offences triable in the
sessions, which shall not have been tried and determined;
and provides for the trial of such cases in the sessions if
the oyer and terminer should remit such indictments again
to the sessions without trial.

The provisions of this section are ample, to authorize
the sending of all indictments found in that court to the
oyer and terminer; and if the enlargement of their juris-
diction has any effect to limit the power of the court under
the 6th section, the same cause would extend the operation
of the 7th section.  The two sections, taken together, were
evidently intended to compel the sessions to send to the
oyer and terminer all indictments for offences which they
could not try, and to give to that court a discretion to send
any case which they could try to this court, if they deemed
it expedient so to order, and notwithstanding the passage
of the act of 1855 extending the jurisdiction of that court,
I am of the opinion that they possess the same power now
as to all indictments pending in that court.

The intent of the legislature in the 7th section, at its
original passage, was probably to direct a more general
transfer of indictments by the sessions to the oyer and
terminer, than is now supposed.

In England, when the court of oyer and terminer, and
jail delivery was held in any county, that court had the
entire control of the criminal business of the county during
its sessions, relating to prisoners in jail wherever indicted
(4 *Black.*, 270), and on the organization of those courts in
this state the same powers were given.  By the act relating
to those courts, as revised in 1813 (1 *R. S.*, 336, §§ 16, 47),
such jurisdiction was continued.

The statute regulating courts of sessions (2 *R. S.*, 150),
not only made it obligatory upon the sessions to send to
the next supreme court, or oyer and terminer, the indict-
ments for offences not triable by the sessions; but by § 3
that court was directed to send all indictments against pri-

soners in jail, not heard or determined, to the next court of oyer and terminer, and with provision for remitting them back to the sessions if not tried during that court.

The object of these provisions was undoubtedly to relieve the prisoners during the setting of the court as far as possible, and entire jurisdiction for that purpose was given to the court. In the *Revised Statutes* (*2d vol.*, *p.* 209) this section was so altered as to make it permissive, and not obligatory on the. sessions, to send all indictments to the next oyer and terminer whenever it was to be in session, but in other respects the power and authority remain the same.

I have no doubt of the authority of the court of sessions, under these provisions, to send to the next court of oyer and terminer any indictment found in that court not heard and determined as fully as might have been done before the act of 1855.

In the present case, however, there are other reasons why I deem it proper to remit this case to the sessions for trial. The indictment was originally tried in that court. The court of appeals have granted a new trial, not for any errors of law, but because they thought the verdict of the jury was contrary to the evidence. They sent it back to that court for trial. No reason is shown why the case should not be again tried in that court. The legislature have conferred upon the sessions authority to try such cases, and although in cases where an indictment for an offence punishable with death, found in that court, is removed into this court before any trial has been had, I should not hesitate to retain the same for trial here, yet under the peculiar circumstances of this case, I think unless some good reason is shown therefor, the new trial should take place in the same court where it was previously tried.

There are several cases now pending in this court for trial, which will require all the time of the court to dispose of them within the period allowed for its session; and as

no reason whatever is stated by the district attorney to show the necessity of the trial here in this case, I am of the opinion that the motion to remit the indictment to the sessions should be granted.